```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION
```

J & J Sports Productions, Inc.,

    Plaintiff,

  v.                                Case No. 2:13-cv-915

Donald T. Smith, Jr.,
et al.,

    Defendants.

OPINION AND ORDER

This is an action brought by plaintiff J & J Sports Productions, Inc., against defendant Donald T. Smith, Jr., and Strike City, LLC, individually and as the alter ego of Rule (3), 650 Windmiller Drive, Pickerington, Ohio, a business consisting of a bar and dining room with an attached bowling alley. Defendant Smith is alleged to be an officer of Strike City, which owns and operates Rule (3). Plaintiff is a closed-circuit distributor of sports and entertainment programming. Plaintiff alleges that it purchased the rights to broadcast a sports even entitled "MANNY PACQUIAO v. SHANE MOSLEY: WBO Welterweight Championship Fight Program" ("the Program") shown on Saturday, May 7, 2011. Defendants allegedly broadcast the program at Rule (3) without purchasing the rights to do so.

In Count 1 of its complaint filed on September 16, 2013, plaintiff asserts a claim under the Communications Act of 1934, as amended, 47 U.S.C. §605, et seq. In Count 2, plaintiff alleges a violation of the Cable and Television Consumer Protection and Competition Act of 1992, as amended, 47 U.S.C. §553, et seq. Count 3 of the complaint asserts a claim for conversion.

The record indicates that defendants and the statutory agent for Strike City were served with summonses, which were returned executed. After defendants failed to file an answer, plaintiff filed an application for entry of default. The clerk entered default on November 12, 2013. On December 12, 2013, plaintiff filed a motion for default judgment. On January 28, 2014,, this court entered an order directing the clerk to mail a copy of plaintiff's motion for default judgment to the defendants via certified mail, and directing the defendants to respond to the motion no later than February 10, 2014. The certified mail receipts indicate that defendants received this order. No response to the motion has been filed.

This matter is now before the court on plaintiff's motion for default judgment. Fed.R.Civ.P. 55(b) governs default judgment. Once a default is entered, the defendants are considered to have admitted all of the well-pleaded allegations in the complaint. Ford Motor Co. v. Cross, 441 F.Supp.2d 837, 845 (E.D.Mich. 2006)(citing Matter of Visioneering Construction, 661 F.2d 119, 124 (6th Cir. 1981)). However, while the well-pleaded factual allegations in the complaint are taken as true when a defendant is in default, damages are not. Ford Motor Co., 441 F.Supp.2d at 848. Where damages are unliquidated, a default admits only defendant's liability and the amount of damages must be proved. Antoine v. Atlas Turner, Inc., 66 F.3d 105, 110 (6th Cir. 1995). Although the court may conduct an evidentiary hearing to determine damages, an evidentiary hearing is not a prerequisite to the entry of default judgment if damages are contained in documentary evidence or detailed affidavits and can be ascertained on the record before the

2

court. J&J Sports Production, Inc. v. Lukes, No. 1:10 CV 00535, 2010 WL 4105663 at *1 (N.D.Ohio Oct. 18, 2010).

Title 47, §605(a) prohibits the unauthorized interception of radio communications. That section has been interpreted as outlawing satellite signal piracy. Cablevision of Michigan, Inc. v. Sports Palace, Inc., 27 F.3d 566 (table), 1994 WL 245584 at *3 (6th Cir. June 6, 1994). Section 605 permits the aggrieved party to recover actual damages or statutory damages of not less than $1,000 or more than $10,000 for each violation. 47 U.S.C. §605(e)(3)(C)(i)(I) and (II). There are no mens rea or scienter elements for a non-willful violation of that section; rather, it is a strict liability offense, and intent is immaterial to liability. Joe Hand Promotions, Inc. v. Easterling, No. 4:08 CV 1259, 2009 WL 1767579 at *4 (N.D.Ohio June 22, 2009)(citing Int'l Cablevision, Inc. v. Sykes, 997 F.2d 998, 1004 (2d Cir. 1993) and Kingvision Pay Per View Ltd. v. Williams, 1 F.Supp.2d 1481, 1484 (S.D.Ga. 1998)).

Where the court finds that the violation was committed willfully and for purpose of commercial advantage or private financial gain, the court, in its discretion, may increase the award of actual or statutory damages by an amount not to exceed $50,000. 47 U.S.C. §605(e)(3)(C)(ii). Section 605 also permits an award of costs and reasonable attorney's fees. 47 U.S.C. §605(e)(3)(B)(iii).

It is illegal under 47 U.S.C. §553(a)(1) to intercept or receive without authorization any communications service offered over a cable system. Section 553 bans the theft of programming directly from a cable system. Id. Under §553, a party may recover actual damages, or, in the alternative, an award of statutory

damages for all violations involved in the action in an amount not less than $250 but not greater than $10,000.  47 U.S.C. §553(c)(3)(A)(i) and (ii).  This is likewise a strict liability statute.  Easterling, 2009 WL 1767579 at *4.  Where the court finds that the violation was committed willfully and for purpose of commercial advantage or private financial gain, the court, in its discretion, may increase the award of damages, either actual or statutory, by an amount not more than $50,000.  47 U.S.C. §553(c)(3)(B).  Section 553 also provides for an award of costs and reasonable attorney's fees.  47 U.S.C. §553(c)(2)(C).

Courts have held that when a defendant is liable under both §553 and §605, a plaintiff may recover under only one section.  See J & J Sports Productions, Inc. v. Palumbo, , No. 4:12CV2091, 2012 6861507 at *3 (N.D.Ohio Dec. 12, 2012); Joe Hand Promotions, Inc. v. RPM Management Co. LLC, No. 2:11-cv-377, 2011 WL 5389425 at *2 (S.D.Ohio Nov. 7, 2011); Joe Hand Promotions, Inc. v. RPM Management Co. LLC, No. 2:09-cv-862, 2011 W 1043574 (S.D.Ohio Mar. 18, 2011).  In that situation, typically §605 is applied because it allows for a higher recovery.

In awarding statutory damages for non-willful infractions, courts may consider the price a defendant would have had to pay to obtain the right to receive and display a broadcast, and the plaintiff's cost to monitor and investigate its broadcasting rights.  Joe Hand Promotions, Inc. v. Potopsky, No. 1:10-cv-1474, 2011 WL 2648620 at *4 (N.D.Ohio July 6, 2011).  In this case, plaintiff has submitted the affidavit of Joseph Gagliardi, president of J & J Sports Productions. Mr. Gagliardi stated in his affidavit that plaintiff is a closed-circuit distributor of sports

4

and entertainment programming.  Gagliardi Aff., ¶ 3.  Plaintiff purchased the rights to the Program, which was broadcast on May 7, 2011.  Gagliardi Aff., ¶ 3.  Rule (3) did not obtain a license from plaintiff to exhibit the Program.  Gagliardi Aff., ¶ 7.  The sublicense fee is based on the capacity of the establishment.  For this event, the fee would have been $12,200 for commercial establishment with a maximum fire code occupancy of five hundred persons.  Gagliardi Aff., ¶ 8.  Plaintiff retains law enforcement personnel and auditors "at considerable expense" to detect and identify signal pirates.  Gagliardi Aff., ¶ 6.

Plaintiff has also presented the affidavit of Investigator Paul Jason Hall, who was present at Rule (3) from 11:00 p.m. on May 7, 2011, to 1:15 a.m. on May 8, 2011.  Mr. Hall stated that he did not pay a cover charge to enter the premises.  Mr. Hall stated that he observed the Pacquiao v. Mosley pay-per-view boxing event being broadcast on twenty-two television screens on the premises.  Mr. Hall observed that the premises included a bar with dining room, a game room and a bowling alley, and has the capacity to accommodate approximately five hundred people.  He counted the patrons three times while he was there; the head counts were 220, 209 and 170.  Plaintiff has submitted no information concerning what expenses, if any, it incurred in investigating this particular infraction.  Thus, the statutory damages payable under §605(e)(3)(C)(i)(I) and (II) would be $1,150.00.

However, plaintiff argues that it is entitled to enhanced damages under §605(e)(3)(C)(ii) for a willful violation.  Conduct is "willful" if it shows "disregard for the governing statute and an indifference to its requirements."  <u>Transworld Airlines, Inc. v.</u>

5

Thurston, 469 U.S. 111, 127 (1985). For purposes of §605, conduct is "willful" where there were repeated violations over time. Easterling, 2009 WL 1767579 at *6, n. 2 (citing Cable/Home Communication Corp. v. Network Prod. Inc., 902 F.2d 829, 851 (11th Cir. 1990)). The court may also draw an inference of willfulness from a defendant's failure to appear and defend an action in which the plaintiff demands increased statutory damages based on allegations of willful conduct. Id.

In this case, plaintiff has submitted evidence that it would be impossible to mistakenly or accidently intercept the Program. See Gagliardi Aff., ¶ 9. Illegal methods of interception include: (1) a black box, hotbox or pancake box installed on a cable television line to allow for the descrambled reception of a pay-per-view broadcast; (2) the use of a smart card, test card or programming card installed on a DSS satellite receiver line to allow for the descrambled reception of a pay-per-view broadcast; (3) a purposeful misrepresentation by a commercial establishment that it was a residence for purposes of purchasing a pay-per-view program at the residential rate; (4) the use of an illegal cable drop or splice to divert the broadcast from an apartment or home to a nearby commercial establishment; or (5) the purchase of other illegal decryption devices or satellite authorization codes. Gagliardi Aff., ¶ 9.

Defendants failed to appear and defend this action, which alleged willful violations of §605 and §553. Plaintiff also notes that defendants have allegedly committed at least one other violation in the past. See Joe Hand Promotions, Inc. v. Donald T. Smith, Jr., Case No. 2:12-cv-559 (S.D.Ohio)(dismissed upon

settlement on Feb. 2, 2013).  Thus, the court finds that there is sufficient evidence that the violations in this case were willful.

Plaintiff must also show that the violation was committed for purpose of commercial advantage or private financial gain.  Other courts have held that this requirement is not satisfied where there was no evidence of a cover charge, no evidence that the program was advertised or that food or drink prices were increased, and where the establishments were not filled to capacity.  See Lukes, 2010 WL 4105663 at *3; Easterling, 2009 WL 1767579 at *6 (evidence of willful exhibition for financial gain insufficient where there were at most seventy-two patrons present in bar which held up to one hundred and twenty customers, there was no cover charge, and there was no evidence that the event was advertised or that food prices were increased).  However, in Joe Hand Promotions, Inc. v. McBroom, No. 5:09-cv-276(CAR), 2009 WL 5031580 at *6 (M.D.Ga. Dec. 15, 2009), the court awarded enhanced damages of $3,300 (three times the amount of the licensing fee of $1,100) even though there was no evidence of repeated violations, that a cover fee was charged, or that the event was advertised, and where the restaurant, which had a capacity of two hundred persons, had eight customers on the night of the broadcast.  In Joe Hand Promotions, Inc. v. RPM Management Co. LLC, this court awarded enhanced statutory damages in the amount of $25,000 even though there was no cover charge and the facility was not filled to capacity.  See 2011 WL 5389425 at *3-4.

Plaintiff argues that the fact that a pirated event is not advertised does not indicate the lack of a purpose to profit from the event, since pirates do not generally advertise the fact that they intend to unlawfully exhibit programming because they wish to

7

escape detection. See Gagliardi Aff., ¶ 15. Mr. Gagliardi also stated that it is uncommon for pirate locations and licensees who legally broadcast programs to increase food or beverage prices to recover the cost of the license. Gagliardi Aff., ¶ 16. He also indicated that most pirate establishments do not charge a cover because to do so would defeat their purpose of obtaining a competitive advantage by not charging a cover fee for the event, thereby attracting customers away from licensed establishments. Gagliardi Aff., ¶ 17.

In this case, the evidence includes three separate head counts of 220, 209 and 170 patrons present at Rule (3) while the investigator was there. See Hall Aff. This was a sizable audience, considering the bar's capacity of 500 persons and the fact that Mr. Hall witnessed the Program being shown on Rule (3)'s televisions after 11:00 p.m. The establishment had twenty-two television screens, all of which were showing the Program. The court concludes that there is sufficient evidence that the willful violation in this case was committed for the purpose of commercial advantage or private financial gain. The court finds that enhanced statutory damages in the amount of $25,000.00 is an appropriate award in this case.

Plaintiff is also entitled to an award of attorney's fees and costs. In this case, plaintiff has submitted an affidavit from counsel claiming $1,350.00 in attorney's fees and $400.00 in costs. The court finds that an award in these amounts is reasonable. Therefore, the court also awards the plaintiff $1,350.00 in attorney's fees and $400.00 in costs.

In accordance with the foregoing, plaintiff's motion for

default judgment (Doc. 10) is granted.  The clerk shall enter judgment in favor of plaintiff and against the defendants, jointly and severally, in the total amount of $26,750.00, consisting of $25,000.00 in statutory damages for a willful violation of §605, committed with the purpose of commercial advantage or financial gain, $1,350.00 in attorney's fees, and $400.00 in costs.

    It is so ordered.

Date: February 13, 2014                  s/James L. Graham
                                       James L. Graham
                                       United States District Judge